CASUALTY CO. OF AMERICA v. UNITED STATES CASUALTY CO.

(Supreme Court, Appellate Division, First Department. April 3, 1914.)

1. INSURANCE (§ 686*)—REINSURANCE—ACTIONS UPON CONTRACTS OF REINSURANCE—EVIDENCE.

In an action upon a reinsurance contract, evidence *held* not to sustain a finding that a clause exempting the reinsurer from liability for accidental injuries occurring to the insured while on a trip to Alaska was omitted from the reinsurance contract by mistake.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1823; Dec. Dig. § 686.*]

2. INSURANCE (§ 679*)—REINSURANCE—CONTRACT—CONSTRUCTION.

An insurance company insured the insured against accidental injuries from 1904 to 1909, but each year issued a new policy based upon a new application. A reinsurance company issued separate contracts of reinsurance for each of the policies issued; such contracts being based upon the policy and application for that particular year. *Held*, that each policy was a new, separate, and independent contract, and likewise each re-

insurance contract constituted also a new contract to be read with the application and policy for that year.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1811, 1812, 1818, 1819; Dec. Dig. § 679.*]

Appeal from Special Term, New York County.

Action by the Casualty Company of America against the United States Casualty Company. From a judgment for defendant, plaintiff appeals. Reversed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Theodore H. Lord, of New York City, for appellant.

Abraham L. Gutman, of New York City, for respondent.

SCOTT, J. One Henry G. Elliott was insured by the plaintiff from May, 1904, until December, 1909, the date of his death, against accidental injuries and death by accident. He held successive policies of insurance each being issued for the term of one year. In 1905 and 1908 the outstanding policy was extended for one year by certificate. In 1904, 1906, 1907, and 1908 new policies were issued based upon new applications. Defendant by contract with plaintiff reinsured the risk each year to the extent of one-half thereof. In December, 1909, Elliott was accidentally killed while on a visit to Alaska, and plaintiff paid the amount for which he was insured in compliance with the terms of its outstanding policy and now calls upon defendant for contribution in accordance with the terms of its reinsurance contract. Defendant by way of counterclaim asks that its contract of reinsurance be reformed by inserting a clause therein relieving the defendant from liability in case the said Elliott should sustain accidental injuries, fatal or nonfatal, or suffer disease or illness while outside of the limits of Canada, Europe, and the United States; the territory of Alaska not to be included as a part of the United States. It is alleged, and the court at Special Term has so found, that it was the intention of both parties to the reinsurance contract outstanding at the time of Elliott's death that this clause should be inserted therein, and that its omission was due to mutual mistake.

[1] The basic facts are undisputed, and are proven by written evidence; the only controversy being as to the deductions to be drawn from them.

It appears that separate contracts of reinsurance were executed whenever new policies were issued or old policies extended by plaintiff. In each instance when plaintiff issued a new policy upon a new application, copies of the application and the policy were furnished to defendant and constituted the basis upon which its contract of reinsurance was made.

In 1904 it appeared from Elliott's application for insurance that he contemplated a trip to Alaska, and defendant, noticing this, declined to reinsure the risk unless it should be exempted from liability in case of death or injury in Alaska. Plaintiff, having an agreement with Elliott that its policy should not be effective while the insured was in Alaska,

undertook in writing that if defendant should reinsure the risk it should not be bound thereon outside the limits of the United States, Canada, and Europe; Alaska not included. Upon this undertaking, defendant reinsured the risk assumed by plaintiff by its policy of 1904. The next application made by Elliott was in 1906, and neither in this application, nor in those made by him in 1907 or 1908, was there any statement that he contemplated a visit to Alaska. On the contrary, in each of those applications he stated in effect that he did not contemplate any special journey or hazardous undertaking. It is doubtless owing to this fact that no special agreement excluding injuries or death while in Alaska was made between Elliott and the plaintiff nor between plaintiff and defendant. Upon these facts the court at Special Term arrived at the conclusion that it was the intention of the parties that the clause exempting defendant from liability in case of death or accident in Alaska should be inserted in each of the successive contracts of reinsurance and that its omission was due to a mutual mistake. This conclusion was arrived at by considering each successive contract of reinsurance as a mere continuation of the first contract of reinsurance issued in 1904 and subject to the express qualifications attached to that contract.

[2] We are unable to agree either with the conclusions or with the grounds upon which it was arrived at. In our view each policy issued by plaintiff, at least each of those issued in 1904, 1906, 1907, and 1908, was a new, separate, and independent contract, based upon a new application which constituted a part of the contract of insurance. In the same way each contract of reinsurance executed by defendant, at least in the years mentioned, constituted a new, separate, and independent contract based upon, and to be read in connection with, the application made to plaintiff in the particular year and the new policy issued by it upon such application. The mere fact that in its letter inviting reinsurance in each year plaintiff referred to the proposed contract as a "renewal" of a former contract did not serve to so link the successive contracts together as to attach to each the special exemption from liability agreed to when the first contract for reinsurance was executed. There was a very special reason in 1904 why the defendant should insist upon and receive an exemption from liability in case of death or accident in Alaska, to wit, the declared intention of the insured to make a visit to Alaska. That reason did not exist in any of the subsequent years, and we find it impossible to believe that either plaintiff or defendant intended in 1908 to include in the reinsurance contract a proviso against liability which neither had reason to anticipate. The truth undoubtedly is that both plaintiff and defendant were misled by Elliott's declaration that he contemplated no special journey and for this reason omitted to safeguard themselves against a loss resulting from a visit to Alaska.

The result is that the judgment appealed from must be reversed, with costs, and the counterclaim of defendants dismissed. It is obvious that the basic facts cannot be changed upon a new trial, and we do not understand that defendant contests its liability if the reinsurance contract be not reformed. Judgment will therefore be given for plaintiff, with costs.

The appropriate modification and reversal of the findings of fact, and the new findings to be made, will be passed upon on the settlement of the order. All concur.

1. BROKERS (§ 69*)—COMMISSION ON RENTS—LEASE WITH OPTION OF RENEWAL.
     Where a broker, to whom the principal was to pay the regular commission on the amount of rent received for premises leased  through him, secured a tenant who leased the premises for seven years with an option of renewing at the end of that term upon giving four months' notice prior thereto, under the same conditions and a further option for a second renewal, the broker was entitled to a commission only on the rent for the first term and not on that for the renewal term.
     [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 55; Dec. Dig. § 69.*]

2. FRAUDS, STATUTE OF (§ 45*)—NONPERFORMANCE WITHIN ONE YEAR—COMMISSION ON RENEWAL OF LEASE.
     An agreement by the principal that the broker should receive a commission on the rent for the renewal of the term if the tenant exercised his option was an agreement for the payment of money not to be performed within one year, and therefore within the statute of frauds. Personal Property Law (Consol. Laws, c. 41) § 31.
     [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 67, 68, 70, 71; Dec. Dig. § 45.*]

3. BROKERS (§ 60*)—COMPENSATION—FAILURE TO COMPLETE TRANSACTION—OPTION TO RENEW LEASE.
     Even if that contract was enforceable, the broker was not entitled to any commission where tenant failed to exercise its option at the time specified, but did take a new lease with different provisions after considerable negotiations with the principal.
     [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 91; Dec. Dig. § 60.*]

     Dowling and Hotchkiss, JJ., dissenting.

